UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERNESTO SEVERINO, Individually and on behalf
of all other persons similarly situated,

Plaintiff,

-against-

GMAP LOGISTICS LLC,

Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  2/3/2026_____

25 Civ. 3078 (AT)

**ORDER**

ANALISA TORRES, District Judge:

On April 15, 2025, Plaintiff, Ernesto Severino, filed this action alleging that Defendant

GMAP Logistics LLC ("GMAP") violated various provisions of the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law.  *See generally* Compl., ECF No. 1.

Before the Court is Severino's motion for an order conditionally certifying an FLSA collective action

under 29 U.S.C. § 216(b) and authorizing him to provide notice to members of the proposed

collective.  *See* Mot., ECF No. 30; Mem., ECF No. 31; Severino Decl., ECF No. 32.  GMAP opposes.

*See* Opp. Mem., ECF No. 35, Perfetto Decl., ECF No. 33; Correa Decl., ECF No. 34.  For the reasons

stated below, Severino's motion is GRANTED.  The Court approves Severino's proposed notice to

class members, subject to the revisions detailed below, and Severino is ordered to submit a revised

proposed notice before the Court authorizes the dissemination of notice.

## BACKGROUND

GMAP is a New York limited liability company that contracts with DoorDash to coordinate

the distribution of packages located at a single warehouse in Mount Vernon, New York.  *See* Opp.

Mem. at 1; Compl. ¶ 8.  GMAP employs numerous individuals as delivery drivers to perform this

task and hired Severino "on a conditional basis" as a delivery driver from December 2024 to

February 2025.  *See* Opp. Mem. at 1; Compl. ¶¶ 11–13.

Severino alleges that, during this time, he worked "five days a week, sometimes as much as 11 hours a day, with no 30-minute lunch break," that he "worked 10 or more hours a day two to three times per week," and that he worked "over 40 hours a week, up to 50 hours total, for at least two weeks a month." Compl. ¶¶ 17–19. He alleges that on days where he worked more than 8 hours, GMAP would "either attribute . . . hours in excess of eight to another day on which Plaintiff worked less than eight hours (which was rare) or omit those hours completely," such that GMAP's records "falsely showed that [Severino] . . . never worked more than eight hours a day or 40 hours a week." *Id.* ¶ 21. Severino states that he "knows from personal conversations and observations that other delivery drivers, who [GMAP] employed, worked the same hours as he did and were subject to the same illegal timekeeping policies." *Id.* ¶¶ 23, 27–28.

GMAP generally denies liability. *See* Answer, ECF No. 20. For purposes of this motion, it states that "delivery associates, like Severino, . . . are responsible for keeping accurate time for their shifts using the ADP mobile phone application," which tracks employees' "clock-in" and "clock-out" times, and which GMAP then uses to pay its employees. *See* Opp. Mem. at 2; Perfetto Decl. ¶ 7.

## LEGAL STANDARD

The FLSA authorizes plaintiffs to file suit on behalf of "other employees similarly situated," but only if such employees "consent in writing." 29 U.S.C. § 216(b). Thus, potential plaintiffs must "opt in" to participate in an FLSA collective action. The FSLA does not guarantee an initiating plaintiff a right to obtain a court-authorized notice to potential opt-in plaintiffs. Rather, "district courts have discretion . . . to implement § 216(b) by facilitating notice." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (alterations adopted and omitted) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

Courts in this Circuit apply a two-step analysis to assess whether to certify an FLSA collective action. *Id.* at 554–55. At the first stage, a court may conditionally certify a collective action if the

plaintiff "make[s] a modest factual showing that he and potential opt-in plaintiffs together were victims of a common policy or plan that violated the [FLSA]." *Id.* at 555 (citation omitted); *see also Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 322 (S.D.N.Y. 2007) ("Conditional [collective action] certification is appropriate . . . where all putative [collective action] members are employees of the same . . . enterprise and allege the same types of FLSA violations."). The purpose of this first stage is only to "determine whether similarly situated plaintiffs do in fact exist," not to weigh the merits of the case. *Hong v. Haiku @ WP Inc.*, 582 F. Supp. 3d 117, 127–28 (S.D.N.Y. 2022) (internal quotations and citation omitted).

If a court conditionally certifies a collective action, the court may authorize the plaintiff to send notice to "potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiff[] with respect to" the FLSA violations alleged. *Myers*, 624 F.3d at 555. The details of a notice issued pursuant to § 216(b) are left to the sound discretion of the district court. *Hoffmann-La Roche*, 493 U.S. at 170. "When exercising [their] broad discretion to craft appropriate notices in individual cases, [d]istrict [c]ourts consider the overarching policies of the collective suit provisions" and ensure that potential opt-in plaintiffs receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Fasanelli*, 516 F. Supp. 2d at 323 (citation omitted).

"At the second stage," which generally occurs after the parties have the opportunity to engage in discovery, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Myers*, 624 F.3d at 555. A court may "decertify" the action if it determines that the opt-in plaintiffs are not "similarly situated," and their claims may be dismissed without prejudice. *Id*; *see Guillen v. Marshalls of MA, Inc.*, 841 F. Supp. 2d 797, 800 (S.D.N.Y. 2012); *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 460 (S.D.N.Y. 2011).

The "modest factual showing" that a plaintiff must make to achieve conditional certification at the first step is not a stringent showing:  Courts frequently describe the plaintiff's burden as "minimal."  *Hong*, 582 F. Supp. 3d at 126; *Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 445–46 (S.D.N.Y. 2013) ("[T]he burden is so low that even one or two affidavits establishing the common plan may suffice."); *see also Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997).  At this stage, courts do not "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."  *Singh v. Anmol Food Mar, Inc.*, No. 22 Civ. 5475, 2024 WL 308241, at *2 (E.D.N.Y. Jan. 26, 2024) (citation omitted).  And where the evidence before the court does present ambiguities, courts "draw all inferences in favor of the [p]laintiff."  *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629, 2013 WL 5211839, at *4 (S.D.N.Y. Sept. 16, 2013) (citation omitted).

## DISCUSSION

I.    <u>Conditional Certification</u>

Severino asks this Court to conditionally certify a collective of "[a]ll persons whom Defendant employ [*sic*] and has employed as a driver, delivery driver, or comparable position at any time since October 1, 2024, to the entry of judgment in this case."[1]  Reply at 10.  In support of his proposed collective, he argues that "other employees, who performed the same or substantially similar duties as him," were subject to the same unlawful policy whereby GMAP would alter its delivery drivers' time records such that the records did not reflect an employee working overtime. Mem. at 1, 4.  Severino states that he knows this from "personal conversations and observations" with

---

[1] Severino first moved for certification of a collective of all delivery drivers employed since April 15, 2022, but the Court construes Severino's reply as conceding to GMAP's objection that the proposed class should be narrowed.  *See* Reply at 10 ("Plaintiff acknowledges that notice can only be sent to putative plaintiffs for as long as Defendant's company has existed.").

other delivery drivers, whom he names as "Jose, Demetrie, Dohnaven, and Dario."  Severino Decl. ¶ 17 (Severino states that the other drivers' last names are unknown).

The Court finds that the evidence, although scant, is sufficient to provide the "modest factual showing" that the FLSA requires at this preliminary stage.  *Kim*, 985 F. Supp. 2d at 445 (citation omitted).  The only piece of evidence submitted in support of these allegations is Severino's declaration, but courts in this Circuit have routinely held that a plaintiff may achieve conditional collective certification by "relying on their own pleadings, affidavits, [or] declarations," and that "even one or two affidavits establishing the common plan may suffice."  *Kim*, 985 F. Supp. 2d at 445–46 (citations omitted).  The Court finds that Severino's declaration, though only a single piece of evidence, provides some material support to his assertion that delivery drivers employed by GMAP experienced FLSA violations as a result of a common policy of altering timekeeping records.  Specifically, Severino alleges that, through conversations with other named delivery drivers and his personal observations, he learned that other employees were similarly denied overtime pay when they should have been paid.  Severino Decl. ¶¶ 14–17.

GMAP, for its part, essentially admits that its delivery drivers all worked from one common warehouse and used one common timekeeping system.  *See* Opp. Mem. at 1–3.  According "all inferences" in Severino's favor, *Mendoza*, 2013 WL 5211839, at *4 (citation omitted), this suggests that multiple delivery drivers are "similarly situated" for purposes of the FLSA violations alleged here.[2]  Several other courts in this Circuit have granted conditional certification on similar records.  *See, e.g.*, *Hong*, 582 F. Supp. 3d at 127–28 (granting certification where a single named plaintiff named other similarly-situated employees by "names or nicknames," and asserted that he learned of

---

[2] Although Severino does not explicitly state that all other employees he talked to were delivery drivers, or that all delivery drivers had the same responsibilities, this inference is reasonable.  *Compare* Severino Decl. ¶¶ 2–7, 14–17, *with* Opp. Mem. at 1–3 (providing no information to suggest that delivery drivers would have different responsibilities or timekeeping systems).

similar FLSA violations by observation); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91, 96 (S.D.N.Y. 2003); *Kemper v. Westbury Operating Corp.*, No. 12 Civ. 895, 2012 WL 4976122, at *2 (E.D.N.Y. Oct. 17, 2012) (collecting cases granting preliminary certification based upon employee affidavits setting forth a defendant's plan or scheme not to pay overtime compensation and identifying similarly situated employees based on conversations or observation).

GMAP's responses overestimate the import of the cases it cites.  For example, GMAP argues that a plaintiff "must allege at least 'where or when' alleged conversations or observations [concerning a defendant's unlawful policy] occurred."  Opp. Mem. at 5.  But the cases GMAP cites do not stand for such a specific rule, and they deny conditional certification on records thinner than the one presently before the Court.  In *Ikikhueme v. CulinArt, Inc.*, the court denied collective certification where a plaintiff made no allegation whatsoever regarding other employees in his same position and only stated that he had an "*understanding*" that other employees with his title were similarly situated.  No. 13 Civ. 293, 2013 WL 2395020, at *2 (S.D.N.Y. June 3, 2013) (emphasis in original).  In *Morales v. Plantworks, Inc.*, the court denied collective certification where the only evidence the plaintiffs submitted was an affidavit from their attorney, leaving the record bare as to how the plaintiffs themselves had any knowledge of similarly situated employees who had experienced similar FLSA violations.  No. 05 Civ. 2349, 2006 WL 278154, at *2 (S.D.N.Y. Feb. 2, 2006).  Here, Severino does provide a basis for his understanding—namely, conversations with several other named employees, all of whom would have worked at the same warehouse as him and used the same timekeeping system.  *See* Opp. Mem. at 1–3; Severino Decl. ¶¶ 14–17.

Likewise, in citing cases where courts have refused conditional certification because of conclusory evidence, GMAP is in fact identifying cases where courts have found that a plaintiff's requested class is overbroad given the evidence before the court.  *See, e.g.*, Opp. Mem. at 5.  In those cases, the plaintiffs' proposed class included employees at different locations or stores, where

timekeeping practices or employee responsibilities may, logically, differ. For example, in denying conditional collective certification in *Guillen v. Marshalls*, the court noted that the plaintiff sought to certify a nationwide class of employees in Marshalls stores but had only submitted evidence tending to show a policy of violating the FLSA at one such store. 841 F. Supp. 2d. 797, 800–01 (S.D.N.Y. 2012). And in *Sanchez v. JMP Ventures, LLC*, the court denied collective certification because the plaintiff had introduced insufficient evidence to support an inference that the alleged FLSA violation was "common practice at all [of the defendant's three] Restaurants," providing absolutely no details supporting the foundation of his knowledge of a common practice across the restaurants. 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014).

If Severino's allegations are true—that GMAP's timekeeping system altered records so as to obscure the true hours worked of its employees—then GMAP provides no reason to believe that its other delivery drivers, who have the same job, operate out of the same single warehouse, and use the same timekeeping system, would not have been subject to those same timekeeping violations. GMAP's remaining contentions are, instead, essentially arguments on the merits: that GMAP's timekeeping system accurately tracked hours worked, that employees were paid in accordance with the timekeeping system, and that Severino, himself, did receive overtime pay. *See* Opp. Mem. at 5–6. These arguments raise the precise sorts of credibility determinations and "substantive issues going to the ultimate merits" that courts do not evaluate at the conditional certification stage, *Singh*, 2024 WL 308241, at *2, and accordingly, do not defeat Severino's claim to collective certification.

## II.    Notice

Next, the Court evaluates the sufficiency of Severino's proposed notice. *See* Proposed Notice, ECF No. 30-1; Proposed Consent, ECF No. 30-2; Proposed Email Notice, ECF No. 30-3; Proposed Post Card, ECF No. 30-4; Proposed Order, ECF No. 30-5. The Court approves Severino's notice,

subject to the revisions listed below.  As Severino acknowledges, all notices must be amended to use October 1, 2024 as the reference date for the collective.  *See* Reply at 9–10.

GMAP objects to the proposed notice on two grounds:  first, that the proposed notice should be limited to the two-month period during which Severino worked for GMAP, from December 2024 to February 2025; and second, that the notice must contain language jointly drafted by the parties.  *See* Opp. Mem. at 7.  Both of these contentions are without merit.  As discussed above, GMAP claims that all of its employees are subject to the same timekeeping system and does not indicate that employees' responsibilities or payment differed during Severino's employment period.  *See* Opp. Mem. at 1–3.  This gives the Court no reason to believe that delivery drivers employed after February 2025 are differently situated than Severino such that notice to those employees would be futile or ineffective.[3]  As for GMAP's second contention, nothing suggests that an FLSA notice must be jointly drafted by the parties.  Of course, GMAP has a right to object to the language in a plaintiff's proposed notice, *see Barkley v. NYU Langone MSO, Inc.*, 2025 WL 1435530, at \*3–4 (S.D.N.Y. May 19, 2025); *Kemper*, 2012 WL 4976122, at \*4 (evaluating the defendants' objections), and GMAP has done so here, *see* Opp. Mem. at 6–7.  But nothing in the FLSA requires that a court can only approve a jointly drafted notice, and the Court will not require as much here.  *See Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009) (stating that courts have broad discretion with respect to the content of an opt-in notice).

Although the Court generally finds the notice sufficient, the Court notes that it contains some errors that must be fixed prior to issuing any notice to class members.  First, GMAP is not a restaurant, and the first page of the notice must therefore describe GMAP as "the company" rather than "the restaurant and certain individuals."  *See* Proposed Notice at 1.  The second page of the

---

[3] GMAP argues that Severino's status as a "conditional" hire and "introductory" employee renders him unfit to speak to company-wide policies.  *See* Opp. Mem. at 1, 6.  But GMAP provides no detail to support its argument that this status, in fact, rendered his responsibilities, timekeeping duties, or pay "atypical" to that of other drivers.  *Id.* at 6.

notice must be amended to reflect that Severino only alleges four additional claims under the New York Labor Law, not six. *See* Proposed Notice at 2; Compl. ¶¶ 62–72, 79–84. It must also clarify that the retaliation claims are pleaded only on behalf of Severino individually, not any other employees, and clarify that the retaliation claims are brought under both state law and the FLSA. *See* Compl. ¶¶ 73–84.

The Court requires the following additional modifications. The first page of the notice shall include the case caption and number, placed above the text that currently names this Court. *See* Proposed Notice at 1. Severino shall amend the first page of the notice to read "by failing to lawfully pay their employees *overtime pay and provide certain wage statements required under state law*" (language in italics added). *See id.* at 1. On the second page of the notice, the following text shall be bolded: "Although Labor Law claims are part of this lawsuit, this particular notice relates only to the unpaid overtime FLSA claim." *See id.* at 2. Severino shall amend the third page of the notice to read that "[t]he main difference between a class action and a collective action is that you are not automatically included in the FLSA collective action, *nor are you bound by the FLSA collective action's outcome, unless you opt in*." (language in italics added). *See id.* at 3.

The post card reminder notice shall also include the case caption and the name of this Court. *See* ECF No. 30-4. The email notice shall include the Court's name in the email subject, following the case number. *See* ECF No. 30-3. Additionally, the Court will not approve an email notice containing a hyperlink unless the text of the hyperlink's proposed target webpage is submitted to the Court. *See id.* Therefore, Severino shall either submit his proposed webpage text or a revised email notice.

## CONCLUSION

For the foregoing reasons, Severino's motion for conditional certification of a collective action is GRANTED. The Court approves an opt-in collective of "all persons whom the Defendant

employs and has employed as a driver, delivery driver, or comparable position at any time since October 1, 2024, to the entry of judgment in this case."

By **February 10, 2026,** Severino shall submit revised proposed notice documents consistent with the terms of this order.  The Court shall thereafter issue an order to govern the notice process.


SO ORDERED.

Dated: February 3, 2026
       New York, New York

_____
ANALISA TORRES
United States District Judge

10